IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Senior Judge Walker D. Miller

Civil Action No. 09-cv-1054-WDM-CBS

ERICA BOUDREAUX, as an individual, wife and personal representative
of the Estate of CHRIS BOUDREAUX,

    Plaintiffs,

v.

GLENN WILSON, individually and in his capacity as a Town of Meeker, Colorado Police Officer;
MIKE WASHBURN, individually and in his capacity as a Town of Meeker, Colorado Police Officer;
ROBERT HERVEY, individually and in his capacity as Chief of Police of the Town of Meeker, Colorado Police Department;
JOHN DOE(S) 1-10, whose names are currently unknown; and
TOWN OF MEEKER, COLORADO,

    Defendants.

**ORDER**

Miller, J.

This case comes before me on Defendants Glenn Wilson ("Wilson") and Mike Washburn's ("Washburn") Motion for Summary Judgment (ECF No. 59) dismissing Plaintiffs' First Claim for Relief for Wrongful Death under 42 U.S.C. § 1983 against them (Second Am. Compl. ¶¶ 41–47, ECF No. 41) and Defendants Town of Meeker and Chief of Police Robert Hervey's ("Hervey") Motion for Summary Judgment on Plaintiffs' Second Claim for Relief under 42 U.S.C. § 1983 (*see* Second Am. Compl. ¶¶ 48–58, ECF No. 41) to the extent that Plaintiffs make a claim for municipal liability against the Town of Meeker and supervisor liability against Chief Hervey. Mot. Summ. J. at 4 & 7,

ECF No. 60.  Following briefing, the parties have agreed that the only claim remaining against Wilson and Washburn is a Fourth Amendment claim against both for alleged use of excessive force and against Wilson for alleged creation of the need for the use of deadly force.  Final Pretrial Ord. at 3–4, ECF No. 81.  The only claim remaining against Meeker and Hervey is the claim that the policies, customs, or practices of Meeker caused the deprivation of Plaintiff's constitutional rights.  *Id.*  Having reviewed the motions and the briefs, I find that oral argument is not necessary to assist me in making a ruling. For the reasons set forth below, the Motions for Summary Judgment shall be granted.

## BACKGROUND[1]

This case arises from a fatal, officer-involved shooting that occurred when the Town of Meeker police responded to a 911 call reporting a domestic violence incident in the early morning of March 28, 2008.

On March 28, 2008, Lt. Wilson and Officer Washburn were employed with the Town of Meeker Police Department.  At approximately 6:00 a.m., Wilson and Washburn were each about to come on duty when they received calls from the local dispatcher reporting that an anonymous person had reported a domestic violence incident occurring in the manager's apartment of the Valley View Motel.  The dispatcher told Wilson that the caller had reported overhearing a man yell, "If you call the cops, I'll kill you."

Both Wilson and Washburn responded to the call and went to the motel.  They

---

[1] The following facts are taken from the parties' briefs and attached exhibits and are undisputed unless otherwise noted.

arrived separately—Washburn first, Wilson second.  Washburn surveyed the scene from the parking lot until Wilson arrived.  The occupants of the apartment, Plaintiff Erica Boudreaux and her husband Chris Boudreaux ("Boudreaux") saw the officers arrive.  After a brief conversation in the parking lot, Wilson and Washburn knocked on the motel office door.  After some delay, Mrs. Boudreaux answered and opened the office door.  The officers asked Mrs. Boudreaux if everything was OK and asked her what was happening.  She explained that she and her husband had been arguing.  From appearances, the officers each suspected that a domestic violence crime had been committed and determined that they had to speak with Boudreaux.

      Mrs. Boudreaux allowed the officers to enter the office of the motel.  Then, she consented to allow the officers to speak with her husband.  The three entered the apartment's kitchen from which Mrs. Boudreaux called to Boudreaux that the police needed to speak to him.  Boudreaux shouted from the living room in an angry and threatening voice: "Get out of my house" and then began yelling obscenities.

      Wilson then climbed a short stairway leading from the kitchen into the living room, shouting "Police."  Wilson entered the darkened living room.  Using a flashlight, Wilson saw Boudreaux standing at the other end of the room.  The lower part of Boudreaux's body was hidden from Wilson's view by furniture.  He was shirtless, standing in a fighting position with an angry expression on his face, and his right hand was hidden behind his back.  He was sweating profusely.  Wilson repeatedly commanded Boudreaux to show his right hand.  When Boudreaux did not comply, Wilson unlatched the security holster on his firearm.  Then, Boudreaux showed his right hand in which he held a large handgun.  Wilson yelled "gun!"

3

Boudreaux pointed the gun at the floor at his right side and began cursing and yelling, "you're not going to take me." Wilson drew his own firearm and took cover behind an upright freezer in the room. As Boudreaux shouted and cursed, he alternated pointing the gun at the floor and at his own right temple. Wilson directed Boudreaux to drop the gun, repeatedly. Meanwhile, Washburn came up the stairs into the living room, unholstering his firearm as he came. Washburn could see Boudreaux standing at the far end of the room waving the gun around, then pointing it at the floor, and then at his own right temple. Each officer testified that he thought that Boudreaux's behavior threatened their safety and the safety of others. Mrs. Boudreaux tried to come into the living room but Washburn turned to her, leaned her direction, and told her to back up. As Washburn did this, he heard a gunshot. Neither Washburn nor Mrs. Boudreaux knew which man had shot his gun. Neither one saw whether Boudreaux leveled his gun at Wilson before Wilson fired his gun.

Wilson testified that Boudreaux brought the muzzle of the gun to his temple one last time, then, instead of lowering it to the ground, he aimed it at Wilson.[2] Boudreaux went silent and his facial expression changed. Wilson yelled "stop" and fired one shot at Boudreaux's chest. The force of the gunshot caused Boudreaux to drop his gun and fall onto his back. Wilson and Washburn approached Boudreaux and Wilson kicked the gun out of his reach. The entire event evolved rapidly, taking a total of one or two minutes. No testimony disputes Wilson's recollection of the shooting. Mrs. Boudreaux now questions whether Boudreaux leveled his gun at Wilson, however. Resp. Mot.

---

[2] Plaintiff seeks to dispute this part of Wilson's testimony but presents no admissible evidence to contest his testimony.

Summ J. (ECF No. 51).

Wilson called 911 and ordered an ambulance. He testified that he moved Boudreaux's body away from the fireplace where he had landed in order to open Boudreaux's airway. Wilson was beginning to administer first aid when a paramedic arrived. Boudreaux received medical aid from the ambulance crew but died at the scene.

Defendant Police Chief Robert Hervey was not present at the time of the shooting. He responded to a call from the officers on the scene after the incident. He then came to the motel and took control of the scene, as superior officer.

Chief Hervey is responsible for setting the policies for the Town of Meeker Police Department ("Police Department"), including those regarding training and internal investigations of complaints against police officers. It is Police Department policy that its officers must be certified under the Peace Officers Standards and Training found in Colo. Rev. Stat. § 24-31-301, *et seq.* In addition, Town of Meeker police officers undergo annual training on a variety of subject matters, including the constitutional parameters of use of force and deadly force, the use of firearms, hands-on arrest control techniques, CPR, first aid, TASER training, building searches, and driving techniques. At the Police Department, Chief Hervey or the lieutenant conducts a monthly departmental meeting that includes a discussion of changes in state statutes, municipal codes and ordinances, current policies, procedures, and relevant police training topics.

## STANDARD OF REVIEW

Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56.  The nonmoving party must set forth facts showing that there is a genuine issue for trial.  The court views the record in the light most favorable to the party opposing the summary judgment motion.  *Cummings v. Norton*, 393 F.3d 1186, 1189 (10th Cir. 2005).  A factual issue is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986).

## DISCUSSION

**A.     Officer Liability:  Qualified Immunity of Officers**

The individual defendants assert that they are entitled to qualified immunity. "Qualified immunity provides, not simply a defense to liability, but a right not to stand trial in the first place. . . ."  *Price-Cornelison v. Brooks*, 524 F.3d 1103 (10th Cir. 2008). "This prophylactic protection is afforded governmental officials on the grounds 'that they can act without fear of harassing litigation only if they reasonably can anticipate when their conduct may give rise to liability for damages and only if unjustified lawsuits are quickly terminated.'"  *Id.* (quoting *Beard v. City of Northglenn, Colo.,* 24 F.3d 110, 113 (10th Cir.1994)); *see also*, *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985).

When a defendant has asserted the affirmative defense of qualified immunity the burden of proof shifts from the defendant to the plaintiff.  *See Median v. Cram*, 252 F.3d 1124, 1128 (10th Cir. 2001).  The burden is two-fold.  *See Reynolds v. Powell*, 370 F.3d 1028, 1030 (10th Cir. 2004).  The plaintiff must show by a preponderance of the

evidence that: (1) Defendants' actions violated a constitutional right and (2) the constitutional right allegedly violated was clearly established at the time of the conduct at issue so that a reasonable law enforcement officer would have known that his challenged conduct was illegal. *Id.* "If no constitutional violation is established by the plaintiff's allegations or the record, [the] inquiry ends. But if a constitutional right was violated, [I] next ask if the constitutional right was clearly established. To be clearly established, either Supreme Court or Tenth Circuit precedent must be on point or the clearly established weight of authority from other courts must agree with plaintiff's contention." *Estate of Larsen*, 511 F.3d 1255, 1259 (10th Cir. 2008) (citing *Cortez v. McCauley*, 478 F.3d 1108, 1114–15. (10th Cir. 2007)).

### 1. Violation of a Constitutional Right

Mrs. Boudreaux asserts that two constitutional rights were violated by Wilson and Washburn—deprivation of the right to familial association pursuant to the First Amendment (*see Roberts v. United States Jaycees*, 468 U.S. 609, 617–18 (1984)); and deprivation of the right to be free from excessive force pursuant to the Fourth Amendment. U.S. Const. amend. IV.

Ordinarily, in determining whether a plaintiff's constitutional rights were violated, we adopt the plaintiff's version of the events, insofar as they are supported by the record. *See Thompson v. Salt Lake City*, 584 F.3d 1304, 1318 (10th Cir. 2009). A plaintiff does not meet the burden by identifying a right "in the abstract" and claiming that the right was violated. *See Pueblo Neighborhood Health Ctrs., Inc. v. Losavio*, 847 F.2d 642, 645 (10th Cir. 1988). She must state the right that was allegedly violated with specificity and demonstrate a substantial correspondence between the conduct and the

7

prior law establishing the officers' actions as clearly prohibited. *See Romero v. Fay*, 45 F.3d 1472, 1475 (10th Cir. 1995). "In short, although [I] will review the evidence in the light most favorable to the nonmoving party, *Nelson,* 207 F.3d 1202, 1205 (10th Cir. 2000), the record must clearly demonstrate the plaintiff has satisfied [her] heavy two-part burden; otherwise, the defendants are entitled to qualified immunity." *Medina v. Cram,* 252 F.3d 1124, 1128 (10th Cir. 2001).

      a. Right of familial association.

"The freedom of intimate association is a substantive due process right, as is it subset, the familial right of association." *Griffin v. Strong*, 983 F.2d 1544, 1547 (10th Cir. 1993). "In describing this constitutionally protected liberty, the [Supreme] Court recognized that 'choices to enter into and maintain certain intimate human relationships must be secured against undue intrusion by the state.'" *Trujillo v. B'd of Cnty Comm'rs of Santa Fe County*, 768 F.2d 1186, (quoting *Roberts v. United States Jaycees*, 468 U.S. 609, 617–18 (1984)).

In order to defeat the officers' motion for summary judgment for violation of the right of familial association, Mrs. Boudreaux must submit evidence of intent. *Trujillo v. Bd. of Cnty. Comm'rs of Santa Fe Cnty*, 768 F.2d 1186, 1190 (10th Cir. 1985); *see also, Rice v. United States*, 166 F.3d 1088, 1092 (10th Cir. 1999) (Respondent must set forth evidence sufficient for a reasonable jury to return a verdict in her favor.). Although Mrs. Boudreaux "has strong philosophical disagreement with the . . . standards set forth in *Trujillo*"—which concludes that an allegation of intent to interfere with the intimate relationship is required to state a claim of interference with familial association under 42 U.S.C. § 1983—she does not dispute Defendants' argument that neither Wilson nor

8

Washburn acted with intent that their conduct would adversely affect the Boudreaux's familial relationship.  *See* Resp. at 14, ECF No. 61.  Here, Mrs. Boudreaux has not presented any evidence of intent.  Accordingly, she has not met her burden to show that the right of familial association was violated by the officers.

      b.  Deadly force*.*

To overcome the qualified immunity defense for the Fourth Amendment claim, Mrs. Boudreaux must show that:  (1) a seizure occurred and (2) that force used in making the seizure was unreasonable.  *See Brower v. Cnty of Inyo*, 489 U.S. 593, 599 (1989).

      i.  *seizure under the Fourth Amendment*

The Courts treat excessive force claims as seizures that are subject to the Fourth Amendment's reasonableness requirement.  *Graham v. Connor*, 490 U.S. 386, 395 (1989)*.*  Here, it is undisputed that in firing his gun, Wilson used deadly force against Boudreaux.  Accordingly, a "seizure" occurred.

      ii.  *reasonableness of seizure*

Deadly force is not unconstitutional where the officer has probable cause to believe that the suspect poses a significant threat of death or serious physical injury to the officer or others.  *Lyle Larsen ex. rel. Sturdivan v. Murr*, 511 F.3d 1255, 1260 (10th Cir. 2008) (hereinafter, "*Estate of Larsen*"); *see also, Jiron v. City of Lakewood*, 392 F.3d 410, 415 (10th Cir. 2004).  Whether the particular use of force was reasonable must be judged from the perspective of a reasonable officer on the scene, rather than with "20/20 hindsight."  *Saucier v. Katz,* 533 U.S. 194, 205 (2001); *see also*, *Estate of Larsen*, 511 F.3d. at 1259.  "[B]ecause 'police officers are often forced to make

split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation,' the reasonableness of the officer's belief as to the appropriate level of force should be judged from that on-scene perspective." *Id.* at 1259–60 (quoting *Saucier v. Katz*, 533 U.S. 194, 205 (2001)).  In the end, the objective reasonableness of an officer's use of force must be assessed considering the totality of the circumstances on a case-by-case basis.  *Id.*  "Furthermore, officers are not required to use alternative, less intrusive means if their conduct is objectively reasonable."  *Jiron*, 392 F.3d at 414 (citing *Medina v. Cram*, 252 F.3d 1124, 1133 (10th Cir. 2001)).  "If an officer reasonably, but mistakenly, believed that a suspect was likely to fight back . . . the officer would be justified in using more force than in fact was needed."  *Saucier*, 533 U.S. at 205.

In assessing the degree of threat facing officers, *Estate of Larsen* advises that I consider a number of non-exclusive factors:

> (1) whether the officers ordered the suspect to drop his weapon and whether the suspect complied with the order; (2) whether any hostile motions were made with the weapon toward the officer; (3) the distance between the officer and the suspect; and (4) the manifest intentions of the suspect.

*Id.* at 1260.

Even assuming Plaintiffs' version of the facts as true—that Boudreaux did not level his gun at Wilson before Wilson fired the fatal shot[3]—in the totality of the circumstances, a reasonable officer on the scene would have probable cause to believe that Boudreaux was a threat to Wilson and Washburn and others, based on his actions.

---

[3] Plaintiffs present no evidence contrary to Wilson's testimony that Boudreaux leveled his gun at Wilson prior to Wilson's having shot Boudreaux.

These include:  (1) Before arriving at the scene, Wilson had heard the radio dispatcher say that the anonymous 911 caller claimed he had overheard a man shout, "If you call the cops, I'll kill you."  (2) Wilson ordered Boudreaux to show his right hand numerous times.  Boudreaux did not immediately comply with the order.  (3) Wilson ordered Boudreaux to drop his weapon multiple times.  Boudreaux did not do as he was ordered.  (4) Boudreaux and Wilson were in a confined space of an apartment living room, with approximately twenty-one feet between them.  (5) Washburn saw Boudreaux wave the gun around and point the gun at his own temple and at the floor.  (6) Washburn drew his own weapon based on what he saw and heard.  (7) Boudreaux manifested his intentions to harm himself, Wilson, or another in repeatedly raising his firearm to his own temple and then aiming at the floor; his cursing and yelling that "you're not going to take me;" and his taking a fighting stance with a gun in his hand. Here, Wilson had probable cause to believe that Boudreaux was a threat to Wilson, himself, and others, making the use of deadly force reasonable and constitutional.

**2.    Creation of situation requiring use of deadly force**.

Assuming it was necessary to use deadly force, I must still determine whether Wilson and Washburn recklessly or deliberately brought about the need to use such force.  *Thomas v. Durastanti*, 607 F.3d 655 (10th Cir. 2010).  Wilson's actions just prior to the use of force are relevant to the determination because they are part of "the 'totality of the circumstances' approach inherent in the Fourth Amendment's reasonableness standard."  *Id.* at 667 (quoting *Medina*, 252 F.3d at 1132); *see also*, *Jiron,* 392 F.3d at 415 ("The officer's conduct before the suspect threatens force is . . . relevant provided it is 'immediately connected' to the seizure and the threat of

force.").

Mrs. Boudreaux claims, without evidentiary support, that Wilson's actions just prior to the shooting were reckless and created the situation where the use of deadly force was required in failing to: investigate the room into which he entered, have cover when he entered the room and confronted Boudreaux, secure the area, investigate whether there were weapons in the house, assess Boudreaux's mental or emotion condition; verify the accuracy of the call, and determine who was at home. Resp. at 17, ECF No. 61. She does not support these claims with any admissible evidence of specific facts or opinion. She cites an expert report that is attached to the Response without a supporting affidavit (ECF No. 64-8). Wilson and Washburn argue that, because the report is not authenticated by an affidavit, I should disregard it. Reply at 8–9, ECF No. 65.

Fed. R. Civ. P. 56(e) requires that facts presented in opposition to summary judgment must be supported by affidavit or otherwise admissible in evidence. Willard's unsworn report is not. For Mrs. Boudreaux to rely on Willard's opinions, she could have and should have set them out in an affidavit or cited to parts of Willard's deposition. She did not, nor has Mrs. Boudreaux filed a motion to file a sur-reply or another motion to supplement the briefs with an affidavit or deposition testimony. Accordingly, I do not consider Willard's opinion in ruling on the Motions for Summary Judgment. Mrs. Boudreaux does not set forth any other evidence or argument to raise a genuine issue of fact whether Wilson was reckless.

The conclusions of *Jiron v. City of Lakewood,* 392 F.3d 410 (10th Cir. 2004) are instructive in this case. In *Jiron*, the Tenth Circuit concluded that the district court did

not err in granting summary judgment in favor of a Lakewood, Colorado police officer who used deadly force where the court determined that the officer was not reckless in her actions just prior to the use of deadly force.  *Id.*

After being confronted by the police officer on the apartment building grounds, "Plaintiff ran into her sister's apartment, grabbed a knife, ran into the back bedroom, closed the bedroom door, and threatened to kill herself." *Id.* at 418.  The officer sent her partner to secure the area outside the bedroom window (through which Jiron was trying to escape) and called for backup.  After her partner left, the officer repeatedly ordered Jiron to leave the bedroom and to drop her weapon and tried to enter the bedroom with Jiron.  *Id.*  Eventually, Jiron exited the bedroom and entered the apartment hallway with the officer.  There, Jiron put the knife to her own chin and told the officer that she was going to kill herself.  "Although up to this point [Jiron] had been crying, screaming, yelling, and cursing, when she exited the bedroom she became very calm, was no longer crying, and had a 'fixed, determined stare' on her face.  When [Jiron] was about five feet away from the officer, [she] turned the knife toward the officer, raised it up, and started 'hacking it in the air.  [The officer] then shot [Jiron] once in the abdomen, and [Jiron] fell to the floor." *Id.* at 412.

The court evaluated the totality of the *Jiron* circumstances from the perspective of a reasonable officer on the scene.  It concluded that the officer's decision to coax Jiron out of the bedroom and into the hallway with her, without waiting for backup, was not reckless.  Had she left Jiron in the bedroom, the officer risked that Jiron would escape into the public in an agitated state, wielding a knife.  *Id.*

Here, Wilson confronted an armed individual, alone, in the confined space of a

13

living room. Washburn did not confront Boudreaux with Wilson because he was occupied with keeping Mrs. Boudreaux out of the situation.[4] Wilson persisted in trying to get Boudreaux to drop his weapon as Boudreaux alternately pointed the gun at his head and the floor. Wilson testified that when Boudreaux aimed the gun at his temple the final time, he went silent and his face took on a look of resolution or determination.

Examining the entirety of the circumstances and the undisputed facts, a reasonable officer would have probable cause to think that there was a threat of serious physical harm to himself or others. In these circumstances, Wilson's use of deadly force was not excessive or reckless. Defendants' actions did not violate Boudreaux's or Plaintiffs' constitutional rights. Because no constitutional violation has been established by Plaintiffs' allegations or the record, my inquiry ends here. I need not consider whether the constitutional right was clearly established. *Estate of Larsen*, 511 F.3d at 1259. Accordingly, Wilson and Washburn have qualified immunity from liability in this matter. Plaintiffs' First Claim for Relief shall be dismissed against Wilson and Washburn in the personal capacities with prejudice. *Bd. of Cnty Comm'rs, Wabaunsee Cnty, Kan. v. Umbehr*, 518 U.S. 668 (1996); *State v. Nieto*, 993 P.2d 493 (Colo. 2000).

**B.     Municipal and Supervisor Liability**.

Having determined that there is no predicate constitutional harm inflicted on Boudreaux by Wilson and Washburn, no municipal liability exists. *Jiron*, 392 F.3d at 419 (citing *City of Los Angeles v. Heller*, 475 U.S. 796 (1986)). In addition, absent a

---

[4] Mrs. Boudreaux conceded that Washburn's failure to intervene or prevent Wilson's use of deadly force is not a Fourth Amendment violation. Accordingly, Mrs. Boudreaux does not oppose summary judgment on this part of Plaintiffs' claims.

constitutional violation of his subordinates, no supervisor liability against Hervey in his individual capacity can exist. *See Whitfield v. Melendez-Rivera*, 431 F.3d 1, 14 (1st Cir. 2005) ("Absent direct participation, a supervisor may only be held liable where (1) the behavior of [his] subordinates results in a constitutional violation and (2) the [supervisor's] action or inaction was affirmatively linked to the behavior in the sense that it could be characterized as supervisory encouragement, condonation or acquiescence or gross negligence . . . amounting to deliberate indifference." (internal citations and quotations omitted)); *see also, Thomson v. Salt Lake City*, 584 F.3d 1304 (10th Cir. 2009)*.*

Accordingly, Defendants Town of Meeker and Chief of Police Robert Hervey's Motion for Summary Judgment on Plaintiffs' Second Claim for Relief under 42 U.S.C. § 1983, to the extent that Plaintiffs make a claim for municipal liability against the Town of Meeker and supervisor liability against Chief Hervey shall be granted.

**C.     Liability in Official Capacity.**

To the extent that Plaintiffs also assert claims against Wilson, Washburn, and Hervey in their official capacities, the defendants are entitled to summary judgment. A claim against an individual in his official capacity is the same as a claim against the governmental entity. *Quint v. Cox.*, 248 F. Supp. 2d 1243, 1251 (D. Kan. 2004) (citing *Kentucky v. Graham*, 473 U.S. 159, 166(1985); *see also*, *Jiron*, 392 F.3d at 419 (citing *City of Los Angeles v. Heller*, 475 U.S. 796 (1986)).

> A governmental entity is liable for the acts of its employees pursuant to § 1983 only if the plaintiff can show: (1) that a municipal employee committed a constitutional violation; and (2) that a municipal policy or custom was the moving force behind the constitutional deprivation. *Myers v. Okla. Cnty. Bd. of Comm'rs*, 151 F.3d 1313, 1316 (10th Cir. 1998). The Tenth Circuit has

15

> repeatedly emphasized the necessity of the first factor, which is that an underlying constitutional violation by a municipal employee is a necessary predicate to municipal liability. *See Jennings v. City of Stillwater*, 383 F.3d 1199, 1205 n.1 (10th Cir. 2004) ("[A] municipality cannot be liable for constitutional violations unless its officers committed a constitutional violation.") . . . .

*Quint*, 348 F. Supp. 2d at 1251.

Here, Plaintiffs have not raised a genuine issue of material fact that Wilson, Washburn, or Hervey—employees of the Town of Meeker—violated Boudreaux's or the other Plaintiffs' constitutional rights. Plaintiffs have not established that any of these employees, in their individual capacities, violated Plaintiffs' constitutional rights. Because there is no predicate constitutional violation, liability cannot be imposed on Wilson, Washburn, and Hervey in their official capacities by way of a claim against the individual defendants. *See id.*

Accordingly, Defendant Chief of Police Hervey's Motion for Summary Judgment on Plaintiffs' Second Claim for Relief under 42 U.S.C. § 1983, to the extent that Plaintiffs make a claim against him in his official capacity shall be granted. Defendants Wilson and Washburn's Motion for Summary Judgment as to Plaintiffs' First Claim for Relief against Wilson and Washburn in the official capacities shall be granted.

Accordingly, it is ORDERED that:

1. Defendants Wilson and Washburn's Motion for Summary Judgment (ECF No. 59) on Plaintiffs' First Claim for Relief for Wrongful Death under 42 U.S.C. § 1983 is granted.

2. Defendants Town of Meeker and Chief of Police Robert Hervey's Motion for Summary Judgment on Plaintiffs' Second Claim for Relief under 42

16

U.S.C. § 1983 is granted.

3. The Complaint shall be dismissed with prejudice as to Defendants Wilson, Washburn, Hervey, and the Town of Meeker.

4. The First Claim for Relief on Plaintiffs' First Claim for Relief for Wrongful Death under 42 U.S.C. § 1983 and the Second Claim for Relief under 42 U.S.C. § 1983 as raised against John Does 1-10 are dismissed without prejudice.

5. Defendants may have their costs.

DATED at Denver, Colorado, on December 9, 2010.

BY THE COURT:

s/ Walker D. Miller
United States Senior District Judge